# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|                                   |     |                                   |
|-----------------------------------|-----|-----------------------------------|
| **LAWRENCE ALLEN, # 252901,**     | *   |                                   |
|                                   | *   |                                   |
|                                   | *   |                                   |
| Plaintiff,                        | *   |                                   |
|                                   | *   |                                   |
| v.                                | *   | Civil Action No. RWT-14-1404      |
|                                   | *   |                                   |
| **VINCENT J. LARK, et al.,**      | *   |                                   |
|                                   | *   |                                   |
| Defendants.                       | *   |                                   |
|                                   | *   |                                   |

## MEMORANDUM OPINION AND ORDER

On April 28, 2014, Plaintiff Lawrence Allen, an inmate formerly housed at Western Correctional Institution ("WCI"), filed this self-represented Complaint alleging he was severely assaulted by correctional officers in April 2014, and that conditions in Housing Unit 4 are intolerable due to lack of clothing, medication, and freezing temperatures.  ECF No. 1.  Allen has supplemented and amended the Complaint on six occasions.  ECF Nos. 2, 3, 8, 11, 12, 16.[1]  On July 28, 2014, Allen filed an Emergency Motion for Preliminary Injunction seeking a transfer from WCI where he claimed his life was endangered by the correctional staff's egregious and continuous abuse.[2]  ECF No. 20.  Allen was transferred to the North Branch Correctional Institution during the pendency of his motion, thus rendering his request for injunctive relief moot, and it shall be denied accordingly.  Now pending before the Court, and addressed herein,

---

[1] Plaintiff Lawrence Allen originally filed two separate, but similarly situated civil actions, RDB-14-1640, RDB-14-2096, which were later consolidated with this case, ECF Nos. 15, 18.  Relevant filings in those consolidated actions were docketed in this case as amendments to the Complaint.  ECF Nos. 11, 12, 16, 17.

[2] In Allen's Emergency Motion for Preliminary Injunction, he reiterates allegations of abuse and attempted murder detailed in previous filings, but also states that Sergeant Brett E. Payton had stopped him from filing additional administrative remedy complaints, there are independent witnesses who are willing to testify, and his injuries are documented.  ECF No. 20, at 2.

is Defendants' Motion to Dismiss or for Summary Judgment filed on December 22, 2014. ECF No. 53.  Allen responded in opposition on January 8 and 15, 2015.  ECF Nos. 58, 61.

## BACKGROUND

At all times relevant to this action, Allen was incarcerated at WCI.  Allen allegedly suffers from multiple sclerosis ("MS"), arthritis, and bilateral sciatic nerve pain in his hips.  This condition affects his balance and requires regular medical treatment, which he maintains he was not receiving at WCI.  Allen filed this action alleging specific instances of assault by prison officers as well as general abuse, withholding medical treatment, neglect, and substandard living conditions.

## I.      Assault During an Institutional-Wide Cell Search

In the Complaint and its six amendments, Allen proffers three comparable accounts of assault during an institutional-wide cell search in April 2014.  Allen does not seem to indicate he was assaulted on multiple occasions during April 2014, but confuses the date on which one protracted assault began—alleging April 11, 16, and 17 in different filings.

In his first account, Allen declares that on April 16, 2014, during an institutional-wide cell search, he was ordered by Officers Vincent J. Lark, Matthew J. Davis, and Brett A. Wilburn to place his hands behind his back to be handcuffed.  ECF No. 1, at 1.  Allen maintains he showed all three officers, as well as Sergeant Brett E. Payton, a medical order stating he should be cuffed with two sets of handcuffs or be provided with a cane for support.  *Id.*  Allen states that the medical order was signed by Dr. Ottey and approved by the Chief of Security, Michael Thomas, and the Building Manager for Housing Unit 4, Lt. William Gordon, Jr.  *Id.*

Allen avers that Lark "snatched" the paperwork from his hand and pushed him into the cell wall with such force that two of his teeth broke, that Davis and Wilburn cuffed him using

one pair of handcuffs, that Davis and Wilburn "dropped" him to the floor where they kicked him in the face and berated him with racial slurs for getting blood on their uniforms, and that Officer Jeremiah L. Fontaine spit on him and yelled "get up dog you can walk." *Id.* Payton ordered the officers to take Allen to cell B-1. *Id.* Allen declares he was dragged to the cell, bleeding and injured, where he was further assaulted and beaten, even "after his bowels broke" and he urinated on himself. *Id.* Allen professes he was then pepper sprayed and left in the freezing cold cell—bleeding, choking, and soiled in his own bodily waste. *Id.* at 2. Allen does not state how long he was left in this state, but asserts that he was eventually taken to a different cell and told to clean himself up. *Id.* As Allen was putting his glasses on, he was again pushed, causing him to lose his balance and fall face-first into a heater located at the bottom of the wall. *Id.* Allen's glasses broke and he claims the shattered glass was forced into his eyes. *Id.* Following the assault, Officers Faust and Wilson began throwing all of his property out onto the tier, including "stationary, mail, photos of dead parents, legal mail, [and] cosmetics." *Id.*

In his second account, Allen asserts that on April 17, 2014, Wilburn, Lark, Fontaine, and Davis asked him to step out onto the tier and strip during the prison-wide cell search. ECF No. 8, at 3. Allen professes he "took his time" due to balance issues caused by his MS. *Id.* He claims Payton pushed him onto Lark, who then smacked him so hard it shattered his eye glasses. *Id.* Allen states that Wilburn demanded he "crawl like a dog," that Fontaine and Davis pushed him up against the cell wall by the window, and that Lark "kicked teeth out." Payton ordered officers to drag him out of the cell and down to B-1 holding, where he states his "bowels broke" and Wilburn "maced" him in the face. *Id.* Allen avows he was then left in the holding cell injured, choking, and soiled. *Id.* Following the assault, Allen states his cellmate told him that all his property was thrown onto the tier. *Id.*

In his third account, Allen names "Wexford Medical Corporation" as a Defendant, but includes no allegations against the medical care contractor.  ECF No. 11.  Rather, Allen again claims he was assaulted during institutional-wide cell searches, but states the assault occurred on April 11, 2014.  *Id*. at 4.  He alleges Payton directed Wilson, Lark, Fontaine, and Davis to search his cell, and when he had trouble walking out of the cell due to his MS, he was "slapped, beaten, spit on, dragged by hair, teeth slapped [and] knocked out."  *Id*.  Allen adds that he was left in the holding cell injured and maced, that "medical staff as a whole . . . didn't care," and that "one nurse Maria said they told her to stay out of it."  *Id*.

## II.    Withholding Medical Treatment

Allen avows that he was denied necessary medical treatment on three separate occasions.  On April 17, 2014, during medical rounds occurring after the alleged assault during the institutional-wide cell search, "RN Lori" saw Allen's face and told Officer Kirby that Allen should be brought to the medical department.  ECF No. 1, at 1.  Allen affirms he was assessed and that it was noted he had two teeth missing, lacerations to his eyes, a sprained neck, a sprained shoulder, two black eyes, and possible fractures to the discs in his neck.  *Id*.  He further alleges that "Nurse Manager Kym was horrified by [the] injuries."  *Id*.  Allen was scheduled to receive an injection for treatment of his MS, but maintains security staff would not allow Kym to administer the MS medication nor any other medications for his injuries.  *Id*.

On April 21, 2014, while housed in cell B-1, Allen insists that medical treatment was again withheld when the medical staff was conducting insulin rounds.  ECF No. 3, at 1.  In response to his screams for assistance, Allen asserts Officers Linn, Snyder, and Crumbbeck came to his cell and beat him into submission, threatening that if he yelled for medical personnel again

they would come back and beat him to death.  *Id.*  Allen indicated he was afraid he would either be killed or further denied MS medication if he stayed at WCI.  *Id*. at 2.

On June 13, 2014, Allen claims security staff in Housing Unit 4 refused to escort him to medical or to allow medical staff to treat him for glaucoma.  ECF No. 12, at 1.  Allen claims he has fourth stage MS and glaucoma, for which he is prescribed three shots of "double dosage of steroids three times a week" and eye drops for both eyes daily.  *Id*.

### III.    Substandard Living Conditions

Allen describes holding cell B-1 as a "torture cell"—purposefully kept bare, lacking running water, and freezing during the colder months with the window open.  ECF No. 1, at 1. He claims the reason this Court, the Internal Investigation Unit, and the public do not know about these conditions, is because no one cares and because when an investigation is conducted, WCI officials temporarily ameliorate the conditions.  *Id*. at 3.

### IV.    Retaliation

Allen claims that on June 13, 2014, Payton, Fontaine, Wilburn, and Officer Barthalomew discovered he had filed administrative remedy complaints ("ARPs") and told him he should "stop complaining and be good boy."  ECF No. 16, at 2.  He further alleges various instances of abuse in retaliation for the ARPs, including Payton and Barthalomew grabbing him and smacking his face; Payton stating he was not receiving medical care because the security staff falsely told the medical staff that he refused; Wilburn and Fontaine taking him to holding cell B-1; and all "these officers" beating, spitting, stomping, kicking, and pepper spraying him.  *Id*. As a result of this assault, Allen maintains he was coughing up blood and suffered a fractured left leg, a fractured left jaw, and two broken ribs.  *Id*. at 2–3.

Allen avows Payton purposefully ignored the advice of two LPNs, who stated he should be taken to the infirmary, and instead took him back to holding cell B-1.  *Id*. at 3.  During his time in the holding cell, Allen claims another inmate named Jamal Mackell assaulted him, stating that Payton and Davis sent him there and that he would be sent again with a weapon if Allen did not stop filing ARPs.  *Id*.; ECF No. 20, at 2. Allen alleges he was left in holding cell B-1 injured, bleeding, and covered with urine and feces for six days until Beverly McCaughlin, CNP, told Captain Butler that she needed to see Allen for chronic medical care.  ECF No. 16, at 3.  According to Allen, CNP McCaughlin asked Payton if he was worried about repercussions should the Court send federal investigators to the prison with a body warrant to view Allen's injuries, and Payton replied that he would simply say Allen had been transferred and is unlocatable.  *Id*. at 4.  As a result of this assault, Allen professes that he suffered two black eyes, a hairline fracture to his left jaw, three fractured ribs, and a compound fracture to his left tibia.  *Id*.

## STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "A material fact is one 'that might affect the outcome of the suit under the governing law.'"  *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Disputes of material fact are genuine if, based on the evidence, "a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  In order to avoid summary judgment, the nonmoving party "'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for

trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)).  While the Court must view the evidence in the light most favorable to the nonmoving party, *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 302 (4th Cir. 2006), it must also "prevent factually unsupported claims and defenses from proceeding to trial," *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993) (internal quotation marks omitted).

## ANALYSIS

Under the Prison Litigation Reform Act of 1995 ("PLRA"), as amended, prisoners must exhaust "such administrative remedies as are available" prior to filing suit in federal court challenging prison conditions.  42 U.S.C. § 1997e(a) (2012).  This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Spires v. Harbaugh*, 438 F. App'x 185, 186 (4th Cir. 2011) (quoting *Porter v. Nussle*, 534 U.S. 516, 516 (2002)).  An administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (citing *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)).  On the other hand, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies which once were available to him no longer are.  *Id.*  (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)).  To be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively.  *Id.*  Having done that, a prisoner has exhausted his available remedies, even if

prison employees do not respond.   *Id.*   (citing *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006)).

The Court cannot consider a claim that either fails to satisfy the administrative exhaustion requirement under the PLRA or fails to demonstrate that the defendants have forfeited their right to raise non-exhaustion as a defense.   *See Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003).   The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process.   *Id.* at 530; *see also Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943–44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief").   This Court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aguilar-Avellaveda*, 478 F.3d at 1225.

In addition, the Court must look to the Eighth Amendment when determining whether force used by prison officials was excessive.   *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996).   "Eighth Amendment analysis necessitates inquiry as to whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)."   *Id.*   In a claim for excessive application of force, a prisoner must meet a heavy burden to satisfy the subjective component that prison officials applied force "maliciously and sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain

or restore discipline." *Boone v. Stallings*, 583 F. App'x 174, 176 (4th Cir. 2014) (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)).  In determining whether a prison official has acted with "wantonness in the infliction of pain," *Whitley*, 475 U.S. at 322, "courts should consider the necessity for the application of force; the relationship between the need for force and the amount of force used; the extent of the injury inflicted; the extent of the threat to the safety of the staff and other prisoners, as reasonably perceived by prison officials based on the facts known to them at the time; and the efforts, if any, taken by the officials to temper the severity of the force applied." *Boone*, 583 F. App'x at 176 (citing *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

Defendants deny they assaulted Allen on April 16 and 17, 2014, state Allen was in possession of all allowable clothing during his assignment, assert Allen received all prescribed medical care, profess the medical records do not support Allen's allegations,[3] and deny practicing or witnessing racial discrimination directed at Allen.  ECF No. 53, at Ex. 1–6. Defendants also raise the affirmative defense that Allen failed to exhaust administrative remedies regarding the excessive force claims occurring in April 2014.  *Id.* at Ex. 7–11.  Defendants did not address Allen's allegations regarding assaults occurring in June 2014.[4]

Allen has offered no evidence to support his claim or to refute Defendants' claim that the April 2014 assault never occurred.  His various accounts of the assault differ on why, when, and how the assault occurred.  While Allen's confusion as to the date of the assault may have an innocent explanation, the other inconsistencies indicate Allen is falsely accusing Defendants. Additionally, there is no evidence that Allen attempted to file an ARP concerning the assault or that he was hindered from doing so.  Allen's claim that he was prohibited from filing ARPs by

---

[3] Defendants provide four pages of Allen's medical records covering for April 16 and 17, 2014.  ECF No. 53, Ex. 6.
[4] In Allen's Opposition, he states he was assaulted on July 2, 2014, resulting in a leg injury and broken ribs. ECF No. 61.

correctional staff is belied by the sheer number of ARP complaints he has filed.  ECF No. 53, at Ex. 8.  Moreover, Defendants have submitted evidence that Allen forged signatures on the ARP filed on April 21, 2014, regarding his claim that medical staff was not providing him with prescribed care.  *Id.* at Ex. 8–10.  While this Court may not make credibility determinations on summary judgment, the lack of evidence supporting Allen's claim that he was assaulted in April 2014, together with the absence of any indication he attempted to exhaust administrative remedies, entitles Defendants to summary judgment for the April 2014 assault allegations.

Allen's claim that Defendants assaulted him on June 13, 2014, however, is supported and requires a direct response from Defendants.  On June 18, 2014, medical staff examined Allen in holding cell B-1.  ECF No. 32, at 4.  The medical record for the visit—written by Beverly McLaughlin, RNP—noted Allen reported being assaulted by officers "for throwing feces" and complained of left-sided jaw pain.  RNP McLaughlin observed purple bruising around Allen's left eye, and a moderate-sized hematoma and a weak but palpable pulse in Allen's lower left leg. *Id.*  In addition, on August 2, 2014, medical staff treated Allen for pain he was experiencing in his left leg, which they described as swollen with hyperpigmentation, tenderness, and peeling skin.  An x-ray of Allen's left leg "demonstrate[d] no evidence of an acute fracture, dislocation or subluxation," and medical staff reported Allen was walking without a limp or any outward signs of pain or discomfort.  *Id.* at 40.  Medical staff also noted Allen had "venous insufficiency: chronic"—a possible alternative reasoning for the leg pain.  *Id.* at 56.

While Allen's initial description of the injuries he suffered may be exaggerated, the medical records demonstrate evidence sufficient to present a colorable claim regarding the alleged assault on June 13, 2014, and Defendants must address it.  Accordingly, it is, this 10th day of March, 2015, by the United States District Court for the District of Maryland,

**ORDERED**, that Plaintiff's Motion for Preliminary Injunction (ECF No. 20) is **DENIED AS MOOT**; and it is further

**ORDERED**, that Plaintiff's Motion for Extension of Time (ECF No. 59) is **DENIED AS MOOT**; and it is further

**ORDERED**, that Defendants' Motion to Dismiss or for Summary Judgment (ECF No. 53) is **GRANTED** as to the assault claim occurring in April 2014 and **DENIED** as to the assault claim occurring on June 13, 2014; and it is further

**ORDERED**, that within thirty (30) days of the date of this Order, Defendants are **DIRECTED** to respond to the June 13, 2014 incident as outlined above; and it is further

**ORDERED**, that the Clerk is **DIRECTED** to provide a copy of this Memorandum Opinion and Order to Plaintiff and to Counsel of Record.


_____
              /s/
ROGER W. TITUS
UNITED STATES DISTRICT JUDGE